# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 15-1571

## FLOVAC, INC

### Plaintiff-Appellant,

v.

### AIRVAC, INC; MARK JONES, President

### Defendants-Appellees

### XYZ INSURANCE COMPANIES; JOHN DOE; RICHARD ROE

### Defendants

## BRIEF OF APPELLANTS

**Roberto Ruiz Comas, Esq.**
USCA No. 32436

**RC LEGAL & LITIGATION SERVICES, P.S.C.**
Attorney for Plaintiffs-Appellants
Doral Bank Plaza, Suite 801
Calle Resolución #33
San Juan, Puerto Rico 00920
Tel. (787)777-8000/Fax (787)767-7107

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................iii

    FEDERAL CASES ................................................................................. iii

    STATE CASES.................................................................................... iv

    FEDERAL STATUTES ........................................................................v

    STATE STATUTES ........................................................................ vi

CORPORATE STATEMENT .......................................................................1

JURISDICTIONAL STATEMENT................................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................3

STATEMENT OF THE CASE .....................................................................4

SUMMARY OF THE ARGUMENTS............................................................7

ARGUMENTS .............................................................................................9

I.   The District Court erred in granting defendants' motion for summary judgment on Flovac, Inc. antitrust claims since it has been established that "vacuum sewer" systems as a particular technology are more suitable for particular geographical and topographical areas than gravity or other technologies, therefore there is a genuine material issue of fact on whether the "vacuum sewer-system" is a submarket within the broader "sewer system" market. ..................................................................................................9

II.  The District Court erred in setting a hearing to discuss the motions for summary judgment after defendant's reply and by that action implying that the issues had been fully briefed..........................................................................9

    A.  Standard of Review ....................................................................9

B.  Argument ........................................................................................9

i.  ***District court erred by dissallowing Flovac's arguments at oral hearing*** .9

ii.  ***There is a genuine issue of material fact as to the relevant market*** .........13

III.  The District Court erred in granting defendants' motion for summary judgment on the appearing party's tortious interference claims since there is a genuine material issue of fact on when the statute of limitations began to run for such claims since Flovac, Inc., became fully aware of the damages suffered as a consequence of the defendants' tortious acts during the summer of 2011 ...........20

A.  Standard of Review ....................................................................20

B.  Argument ...................................................................................20

CONCLUSION ...............................................................................................24

CERTIFICATE OF COMPLIANCE .............................................................25

CERTIFICATE OF SERVICE ........................................................................26

# TABLE OF AUTHORITIES

## FEDERAL CASES

|  | Pages |
|---|---|
| _Bacchus Indus., Inc. v. Arvin Indus._, 939 F.2d 887 (10th Cir., 1991) | 15 |
| _Brown Shoe Co. v. U.S._, 370 U.S. 294 (1962) | 7, 13, 17 |
| _Euromodas, Inc. v. Zanella, Ltd._, 368 F.3d 11 (1st Cir., 2004) | 9, 20 |
| _General Industries Corp. v. Hartz Mountain Corp._ 810 F.2d 795 (8th Cir., 1987) | 15-16 |
| _Kuperman v. Wrenn_, 645 F.3d 69 (1st Cir., 2011) | 9, 20 |
| _Lantec, Inc. v. Novell, Inc._, 146 F. Supp. 2d 1140 (10th Cir., 2001) | 15 |
| _MVM, Inc. v. Rodríguez_, 568 F. Supp.2d 158 (D.P.R., 2008) | 21 |
| _Sanchez-Rodríguez v. AT&T Mobility of P.R., Inc._, 673 F.3d 1 (1st Cir., 2012) | 9, 20 |
| _Sterling Merchandising, Inc. v. Nestle, S.A._, 546 F.Supp.2d 245 (D.P.R., 2010) | 20 |
| _Stockler v. Reassure Am. Life Ins. Co_, No. 11-15415, 2013 WL 866486, at 8 (E.D. Mich. Mar. 7, 2013) | 11-12 |
| _Ticket Center v. Banco Popular_, 613 F. Supp. 2d 162 (D.P.R., 2008) | 19 |
| _United States v. E.I. du Pont de Nemours & Co_, 353 U.S. 586 (1957) | 13 |
| _Velez v. R.J. Reynolds Tobacco Co._, 429 F.3d 10 (1st Cir., 2005) | 21 |

## TABLE OF AUTHORITIES
### (Continued)

### STATE CASES

Pages

*Dolphin Int'l of P.R. v. Ryder Truck Lines*, 127 D.P.R. 869 (1991)        21

*Justino Figueroa v. Walgreens of San Patricio, Inc.*, 155 D.P.R. 560 (2001)        21

*Santiago Rivera v. Ríos Alonso*, 156 D.P.R. 181 (2002)        21

*Seda v. Miranda Hostos*, 88 D.P.R. 355 (1963)        21

*Umpierre v. Banco Popular*, 170 D.P.R. 205 (2007)        21

## TABLE OF AUTHORITIES
### (Continued)

### FEDERAL STATUTES

|  | Pages |
|---|---|
| 15 U.S.C. §1 | 2, 4 |
| 15 U.S.C. §2 | 2, 4 |
| 15 U.S.C. §14 | 2, 4 |
| 15 U.S.C. §15 | 2, 4 |
| 15 U.S.C. §22 | 2, 4 |
| 28 U.S.C. §1337 | 2 |
| 28 U.S.C. §1291 | 2 |
| Federal Rule of Appellate Procedure 4(a) | 2 |
| Federal Rule of Evidence 702 | 16 |

## TABLE OF AUTHORITIES
### (Continued)

### STATE STATUTES

| | Pages |
|---|---|
| 10 P.R. Laws Ann. §258 | 2, 4 |
| 10 P.R. Laws Ann. §260 | 2, 4 |
| 10 P.R. Laws Ann. §266 | 2 |
| 10 P.R. Laws Ann. §268 | 2 |
| 31 P.R. Laws Ann. §5141 | 2, 4, 20 |
| 31 P.R. Laws Ann. §5298(2) | 21 |

## CORPORATE STATEMENT

Plaintiff FLOVAC USA, Inc., in compliance with Rule 26.1 of the Federal Rules of Appellate Procedure informs that it is a for profit corporation organized and existing under the laws of the Commonwealth of Puerto Rico with its principal place of business in San Juan.

## JURISDICTIONAL STATEMENT

Based on the complaint filed May 16, 2012, the district court had original jurisdiction over this antitrust action pursuant to provisions of the Sherman and Clayton Acts, specifically 15 U.S.C. § 1, 2, 14, 15, and 22, and also pursuant to 28 U.S.C. §1337.[1]

The District Court also had supplementary jurisdiction over local claims pursuant to Chapter 13, Monopolies and Restraint of Trade, 10 L.P.R.A. §§258, 260, 266, and 268 and 31 L.P.R.A. §5141.

This Court has appellate jurisdiction over the judgment dismissing case with prejudice entered by the district court on February 6, 2015, pursuant to 28 U.S.C. §1291. On March 5, 2015 the appearing party timely filed a Motion to Amend or Alter Judgment,[2] which properly tolled time to file notice of appeal. The district court denied the appearing party's Motion To Amend or Alter Judgment on March 24, 2015.[3] Therefore, this court has jurisdiction to review the merits of this appeal, as the notice of appeal,[4] was filed on April 22, 2015, in accordance with Federal Rule of Appellate Procedure 4(a).

---

[1] Appendix ["Appx."] 1, Complaint.
[2] Appx. 2, Motion to Alter or Amend Judgment.
[3] Appx. 3, Order Denying Motion to Amend or Alter Judgment.
[4] Appx. 4, Notice of Appeal.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.  The district court erred in granting defendants' motion for summary judgment on Flovac, Inc. antitrust claims since it has been established that "vacuum sewer" systems as a particular technology are more suitable for particular geographical and topographical areas than gravity or other technologies, therefore there is a genuine material issue of fact on whether the "vacuum sewer-system" is a submarket within the broader "sewer system" market.

II.  The District Court erred in setting a hearing to discuss the motions for summary judgment after defendant's reply and by that action implying that the issues had been fully briefed.

III.  The district court erred in granting defendants' motion for summary judgment on the appearing party's tortious interference claims since there is a genuine material issue of fact on when the statute of limitations began to run for such claims since Flovac, Inc., became fully aware of the damages suffered as a consequence of the defendants' tortious acts during the summer of 2011.

## STATEMENT OF THE CASE

On May 16, 2012 plaintiff Flovac, Inc. ["Flovac"], filed a complaint in this case against defendants Airvac, Inc. ["Airvac"] and its president Mark Jones claiming violations to Section 1 of the Sherman Act, 15 U.S.C. § 1 through 7 and 15, violations to the local (Puerto Rico) antitrust statute, 10 L.P.R.A. § 258 and 260, and for tortious interference under article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141.

Plaintiff-Appellant Flovac, is in the business of manufacturing, servicing and testing vacuum sewage systems in connection to construction projects. Flovac, is relatively new to the continental United States and Puerto Rico market, but has been unable to compete in such market due to defendants anti-competitive practices. Defendants-Appellees Airvac is a manufacturer of vacuum sewage systems and has the majority of the markets for construction projects in the Continental United States and Puerto Rico. Mark Jones is Airvac's president.

Flovac's antitrust claim violations rely on the fact that defendants conspired to influence municipalities to issue specifications for vacuum sewer systems installation projects that favored Airvac's system. However, the issues as they pertain to the present appeal are not as to defendants' anti-competitive practices but as to whether or not Flovac could establish upon conclusion of discovery of

4

sufficient genuine issues of fact that would warrant submitting to a jury that vacuum sewer systems are indeed a relevant market for antitrust purposes and that a reasonable jury could find accordingly.

After discovery in the present case was finished, AIRVAC filed a Motion for Summary Judgment on April 21, 2014 in which they argued that they were entitled to summary judgment because, among other things, FLOVAC would not be able to establish to a reasonable jury that vacuum sewer systems are a relevant market for antitrust purposes.[5] AIRVAC also argued that the evidence gathered during discovery points to vacuum sewer systems having other kinds of sewer systems as strong competitors that are interchangeable alternatives to vacuum sewer systems. FLOVAC opposed defendants Motion for Summary Judgment. In such opposition, FLOVAC presented evidence including its President's statement under penalty of perjury and AIRVAC's list of projects per state to establish that in fact, vacuum sewer systems are in itself a relevant product market for antitrust purposes. If vacuum sewer systems are established as a relevant product market there is no dispute that AIRVAC would hold at least 87% of the market.[6] On August 14, 2014, defendants filed a Reply to FLOVAC's Response to Motion for Summary Judgment.[7] One day after defendants filed their reply on August 15, 2014, the

---

[5] Appx. 5 and 6, Motion for Summary Judgment and Memorandum in Support, p. 5-8.
[6] Appx. 9, Flovac Counter Statement to Airvac's Statement of Uncontested Facts, p. 2, fact 9.
[7] Appx. 8, Flovac Opposition to Summary Judgment.

Court, upon AIRVAC's request ordered a Motion Hearing for the present case.[8] On January 29, 2015 the district court held the hearing on AIVAC's Motion for summary judgment. On February 6, 2015 the district court entered Order and Opinion and its corresponding Judgment, granting AIVAC's motion for summary judgment and thus dismissing the present case with prejudice.[9]

In its Opinion and Order the district court agreed with defendants position that FLOVAC did not have or it did not present enough evidence from which a reasonable jury could in fact conclude that vacuum sewer systems are a relevant market for antitrust purposes. The Court also dismissed Flovac's tortious interference claims concluding that they were time barred. This Opinion and Order and Judgment are the subject of the present appeal.

---

[8] Appx. 10, Order Granting Motion for Hearing.
[9] Addendum 138 and 139, Opinion and Order and Judgment.

## SUMMARY OF THE ARGUMENTS

The district court erred in determining that FLOVAC does not have enough evidence by which it could establish to a reasonable jury that vacuum sewer systems are a relevant market for antitrust purposes. Since ***Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962),** the Supreme Court established that within a broad market, **well-defined submarkets** may exist which, in themselves, constitute product markets for antitrust purposes. As the district court recognized in the Opinion and Order subject of this appeal, the First Circuit has not established that a relevant market must be proven with the aid of expert testimony.[10] Some circuits have recognized that relevant markets can be established through lay testimony by people who are familiar with the market. In its Opinion and Order, the District Court did not take into account that all of the witnesses that would be presented by FLOVAC to the jury are all highly familiar with the vacuum sewer system market. This includes FLOVAC's President, its national sales manager, its southeast regional manager, and its mid-atlantic regional sales manager, all of which have at least twenty (20) years of experience in the market. In other words, in lieu of a hired expert witness, FLOVAC would establish a relevant market with the people who know the most about that specific market, AIRVAC's executives. The extent of their knowledge of the market and submarkets, their experience, supporting

---

[10] Addendum 138, Opinion and Order, p. 10.

evidence, and basis for their opinions are credibility issues which are most adequately left for the jury.

The district court also erred in determining that Flovac's tortious interference claim is time barred. State case law governs this matter. It establishes that the statute-of-limitations does not begin to run on this type of actions until a could-be plaintiff becomes fully aware of the damages he/she has suffered as a consequences of someone's tortious acts. In this case, this Honorable Court will see that Flovac presented enough evidence to establish to a reasonable jury that it did not become fully aware of its damages until well into the summer of 2011 as a consequence of Airvac's tortious acts.

## ARGUMENTS

I.    The District Court erred in granting defendants' motion for summary judgment on Flovac, Inc. antitrust claims since it has been established that "vacuum sewer" systems as a particular technology are more suitable for particular geographical and topographical areas than gravity or other technologies, therefore there is a genuine material issue of fact on whether the "vacuum sewer-system" is a submarket within the broader "sewer system" market.

II.    The District Court erred in setting a hearing to discuss the motions for summary judgment after defendant's reply and by that action implying that the issues had been fully briefed.

### A. Standard of Review

The applicable standard of review for a district court's grant for summary judgment is *de novo*. Summary judgment is appropriate when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. ***Sanchez-Rodríguez v. AT&T Mobility of P.R., Inc.,*** **673 F.3d 1 (1st Cir., 2012); *Kuperman v. Wrenn,* 645 F.3d 69 (1st Cir., 2011); *Euromodas, Inc. v. Zanella, Ltd.,* 368 F.3d 11 (1st Cir., 2004).**

### B. Argument

**i.    *District court erred by dissallowing Flovac's arguments at oral hearing***

Both of these errors are being discussed together since they are interrelated. Before we go into the substantive argument subject of this appeal it is important to mention the district court's lack of consideration of Flovac's oral argument presented at the motion hearing held on January 29, 2015. In its Opinion and Order, the district court expressed frustration towards Flovac's apparent

lackadaisical approach to its opposition to summary judgment efforts. The court's frustration primarily consisted on the analysis of the relevant market consisting of two paragraphs, FLOVAC not requesting leave to file a surreply to defendants reply, and that plaintiff's statement of material facts not containing support of its proposed market.

There is no minimum or maximum amount of words a party must argue to defeat summary judgment. For the district court to state that it was frustrated by Flovac's two paragraph analysis of a relevant market is inappropriate especially since as we will see further on, it was enough to create an issue of material fact as to vacuum sewer systems being a relevant sub-market within the broader sewer system market. Also, although Flovac's statement of material facts did not contain additional facts to support its relevant market contentions, it did contain the qualifications of those people who would be able to define a relevant market and that, as will be argued herein is an important fact to this case.

The reason why Flovac did not request leave to file surreply to defendants reply was because, as noted in the statement of the case, just one day after defendants filed their reply the court order the motion hearing. At that time counsel for FLOVAC thought best to prepare for oral argument as opposed to filing the surreply, and thought its arguments at such hearing would be taken into account by the court in its decision of the summary judgment. **They were not**. The district

court mentioned as a footnote in its Opinion and Order that at oral argument Flovac "appeared to change gears, advancing for the first time, a theory that vacuum sewer systems are a submarket of all sewer systems."[11]It went on to state that that theory was hopeless since it was brought for the first time during the hearing and therefore it was deemed waive, citing ***Stockler v. Reassure Am. Life Ins. Co***, No. 11-15415, 2013 WL 866486, at 8 (E.D. Mich. Mar. 7, 2013).

Other than ***Stockler***, **supra**, which is a decision from the eastern district of Michigan and has no authoritative power over this court or the district court, the district court did not cite any other case law to support this position. Aside from that, taking such position seems to be an attack on Flovac's right to a due process since it would be limiting its opportunity to present to the court why summary judgment is not warranted through valid case law arguments to support such arguments. If such a position is taken and is to be allowed, then frankly the whole point of having an oral argument would be inconsequential since parties would only be allowed to read to the court the motions which they have presented.

Regardless of the above, *Stockler*, is highly distinguishable from this case. In that case, the court had before it a case having to do with actions brought under an insurance contract. There were some issues as to the interest being charged by defendants to plaintiff. Summary judgment was filed by defendants and a motion

---

[11] Addendum 138, Opinion and Order, p. 14, footnote 1.

hearing was held. At the motion hearing in that case, plaintiffs raised a new argument for the first time. Plaintiff argued for the first time that defendant had incurred in usury and went on to describe the facts of the alleged usury. **Such argument goes to the facts of the case, not the applicable law**. **The court in that case held that the argument was not properly before the court since it was raised at the motion hearing for the first time**. [Our emphasis]

In no way did Flovac "advanced for the first time" a new factual theory of its case. It is and has always been Flovac's position that vacuum sewer systems are a sub-market of the broader sewer system market. What Flovac did at that hearing was to illustrate the district court that there is Supreme Court precedent that supports Flovac's contention that sub-markets exists within relevant markets that can be analyzed for the purpose of determining market power. That is a point AIRVAC could not refute at oral hearing with case law of its own. However, the district court disallowed that Supreme Court precedent by simply stating that it was raised for the first time in that hearing and therefore it did not take that into account when making its decision.

In its opposition to summary judgment FLOVAC clearly argues the following: **"Now, if the relevant product market as alleged in the complaint is the vacuum sewer system, there is no doubt that Airvac has market power that**

clearly would exceed 88% share using their own number".[12] The fact that at oral argument Flovac presented further case law to support its position does not change what its factual theory has always been regarding the relevant product market in this case, which is vacuum sewer systems. Therefore, the district court erred in not taking into consideration such case law when determining whether there was an issue of genuine material fact in considering if the vacuum sewer system was a sub-market within the context of relevant market power.

ii.  ***There is a genuine issue of material fact as to the relevant market***

Since ***United States v. E.I. du Pont de Nemours & Co***, **353 U.S. 586 (1957) and _Brown Shoe, Co. v. U.S._,** **370 U.S. 294 (1962),** the Supreme Court has recognized that: "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. However, within this broad market, **well-defined submarkets may exist which, in themselves, constitute markets for antitrust purposes**. The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."

---

[12] Appx. 8, Flovac's Opposition to Summary Judgment p.13.

With this case law, it is clear that a submarket within a broad market can be considered a relevant market for antitrust purposes. In this case, the submarket which FLOVAC would establish to a jury is the vacuum sewer system market. That submarket is also part of the broader sewer system market which as AIRVAC pointed out and FLOVAC agreed in its opposition to summary judgment's statements of material fact, including gravity sewer systems, "low pressure" systems, septic tank effluent pump, and septic tank effluent gravity systems. However, the fact that Flovac admitted that those sewer systems form the broad sewer system market, does not automatically mean that a vacuum sewer system market is not a well-defined submarket for antitrust purposes. In fact, both parties agree that if the relevant market for the present case would be established as the vacuum sewer system market then **Airvac would be close to holding 87% share of it**.[13]

Therefore, the issue here is not as to whether the vacuum sewer systems market can be a relevant market for the present case, or if Airvac in fact holds a monopoly share of that market, but rather if FLOVAC could establish to a reasonable jury that in fact such market is a well-defined submarket within the broader sewers system market proposed by Airvac and that as such Airvac almost exclusively controls it.

---

[13] Addendum 138, Opinion and Order p.9.

The main issue why the district court granted defendants summary judgment was because Flovac does not count with a hired expert economic witness who could establish that vacuum sewer systems are a submarket within the broader sewer systems market. Flovac's position in this matter is that, exclusively for arguments sake we recognize it might be convenient and maybe more credible for a jury to hear an expert define the relevant market, such expert testimony is not required in order to prove the relevant market.

In its Opinion and Order the district court recognizes that contrary to other circuits, our First Circuit has not decided whether a plaintiff <u>must</u> produce expert testimony to prove a relevant product market. Likewise, other circuits have held that relevant market can be defined through lay witness testimony or other sufficient evidence through which a reasonable jury could infer market share, market power, relevant market, monopolization, dangerous probability or monopolization and the like. ***Lantec, Inc. v. Novell, Inc.*, 146 F. Supp. 2d 1140 (10th Cir., 2001); *General Industries Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir., 1987)**(testimony of persons familiar with the market established market share); ***Bacchus Indus., Inc. v. Arvin Indus.*, 939 F.2d 887 (10th Cir., 1991)**(lay witness testimony established market share). It all seems to be a matter of convenience for the jury.

In ***General Industries Corp. v. Hartz Mountain Corp.***, **supra**, the 8th Circuit Court of Appeals had before it an appeal from a judgment for treble damages in favor of plaintiffs, a terminated dealer, against defendants, a pet supplies manufacturer. At issue was whether the plaintiff had produced enough evidence to support the jury's verdict that defendant violated sections 1 and 2 of the Sherman Act. Specifically one of the issues was as to whether plaintiff had produced enough evidence to properly define a relevant market, without presenting an expert witness. Evidently the case had gone to trial and the jury was afforded the opportunity to assess the facts and weigh the evidence. More importantly, after the trial was held the jury found for the plaintiff with the evidence presented to them absent expert testimony. So let's take a look at what the evidence presented in that case consisted of. Plaintiff introduced evidence of a person who was familiar with the details of the pet supply business in the relevant geographic area. They presented a former pet supply buyer who had worked for plaintiff and a regional district sales manager for the defendant. None of them were experts pursuant to the Federal Rules of Evidence definition. Fed. R. Evid. R. 702.

In our case, Flovac presented evidence in the form of an unsworn statement from its president Hector Rivera stating that: "[v]acuum sewer systems as a particular technology [are] more suitable for particular geographical and

topographical areas than gravity or other technologies".[14] This statement evidently separates vacuum sewer systems as a submarket. What the court did not take into account when analyzing this statement is that the witness would be able to further explain this statement before a jury and it would go to prove the product's peculiar characteristics and uses, unique production facilities, distinct customers as recognized in *Brown*, supra. Furthermore, the fact that vacuum sewer systems are more suitable for particular geographical and topographical areas than gravity or other technologies is supported by AIRVAC's list of projects it had performed up and until February 2009. Such list evidences that AIRVAC as of 2009 had 54 projects in the state of Florida, 38 projects in the state of Indiana, 26 projects in the state of Virginia and 20 projects in the state of North Carolina.[15]

Moreover and most importantly, the Court disregarded the statement of the defendant's own witness that in our view created such genuine issue of material fact to prove the relevant market in this case. These witnesses, Mark Jones, AIRVAC's current president who began working for AIRVAC in 1992; Rich Naret, who has been working for AIRVAC in sales since 1990 and its current National Sales Manager; Dave Elias, who has been working for AIRVAC as a regional manager since 1996 and has been the Southeast Regional Manager, and Frank Bland, who has been working for AIRVAC since 1992 and its Mid-Atlantic

---

[14] See Appx. 11, Hector Rivera's Unsworn Statement.
[15] See Appx. 12, Airvac's Municipal Vacuum Sewer Projects as of February 2009.

Regional Manager. All these witnesses have plenty of knowledge of the vacuum sewer system submarket and the broader sewer systems market. All of these witnesses were deposed by FLOVAC and their testimonies during such deposition show they would be able to establish differences between vacuum sewers systems and other sewer systems, pricing concepts of the different sewer systems and further back-up Hector Rivera's statement in his unsworn affidavit.[16]

Even though case law establishes that in an antitrust case plaintiff has the burden of defining a relevant market in which defendant holds market power, the First Circuit had not yet established any requisites on what evidence must be

---

[16]      For example: In his deposition Mark Jones testified about gravity systems: "If the ground itself does not have any particular problems and there is a general slope to the ground—then gravity systems is the less complicated and the best to use. In comparison to gravity if there's a high ground water, maybe some environmental restrictions that you need to avoid or go around and it would be particularly expensive to install a gravity system, then a vacuum system may be a good application". Mark Jones deposition, Appx. 2, p. 28, l. 10-22.

About grinder systems Jones testified: "It depends how it lays out. If you have hills, you're going up 50 feet, you're probably going to use a grinder system **because it's not within normal range of vacuum system or any other type of system, or a gravity system without a bunch of stations**." (emphasis provided). Mark Jones deposition, Appx. 13, p. 29-30, l. 22-3.

About the STEP system Jones testified: "Well, the advantage of that system versus our would a lot of cases be - - here it could be elevation again because they could pump it up considerable elevation difference and the lines would be very small, even smaller that the grinder pumps because it's only effluent, it's only liquid, no solids are involved." Mark Jones deposition, Appx. 13, p. 30-31, l. 21-3.

Frank Bland, Airvac's Mid-Atlantic Regional Sales Manager since 1996, testified in his deposition:

"Q. Okay. So before you go in you recognize that the area where you are going to try to sell your product would be feasible for the vacuum system?

A. Some are some aren't.

Q. Okay. But before you go to make your sales pitch, probably you already know which area would be feasible for that, right?

A. **Based on topography**- - based on density of population. That's how they make those decisions.

Q. Now, **is there any particular area where you have worked more than any other area in the east coast**? For example, have you worked more in the Carolinas in comparison to Rhode Island or Maine or something like that?

A. **Yes**.

Q. Okay. Which would be the areas that you have worked more?

A. The North Carolina coast, Virginia coast, Maryland Coast." (emphasis provided) Frank Bland deposition, Appx. 14, p. 13-14, l. 24-21.

provided to define that relevant market. ***Ticket Center v. Banco Popular***, **613 F. Supp. 2d 162 (D.P.R., 2008)**. In ***Ticket Center v. Banco Popular***, **supra**, the district court of Puerto Rico held that plaintiff burden to define the relevant market must "present sufficient evidence from which a reasonable jury could find the existence of the proposed relevant market." Citing ***Coastal Fuels of P.R. v. CAPECO***, **79 F.3d 182 (1st Cir. 1996)**. The court determined that Ticket Center in all but one instance offered nothing more than "mere allegations" which fail to satisfy its burden of presenting definite, competent evidence to rebut the motion for summary judgment.

Our case is certainly distinguishable from ***Ticket Center***, **supra**. Even though we do not count with testimony that may be construed as expert under the rules, to define relevant market we would bring testimony of people who are highly familiar with the industry. Such witnesses include FLOVAC's president and AIRVAC's own executives who would testify as hostile witnesses for FLOVAC. All of these witnesses will define the vacuum sewer market as a submarket of the broader sewer system market. In other words, unlike ***Ticket Center***, **supra**, we do not have "mere allegations" of a relevant market. **We have sufficient, definite, and competent evidence with which to establish a relevant market that should warrant a plenary hearing and serves to rebut the motion for summary judgment. (our emphasis).**

III.     The District Court erred in granting defendants' motion for summary judgment on the appearing party's tortious interference claims since there is a genuine material issue of fact on when the statute of limitations began to run for such claims since Flovac, Inc., became fully aware of the damages suffered as a consequence of the defendants' tortious acts during the summer of 2011.

A. Standard of Review

The applicable standard of review for a district court's grant for summary judgment is *de novo*. Summary judgment is appropriate when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. ***Sanchez-Rodríguez v. AT&T Mobility of P.R., Inc.***, **673 F.3d 1 (1ˢᵗ Cir., 2012); *Kuperman v. Wrenn*, 645 F.3d 69 (1ˢᵗ Cir., 2011); *Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11 (1ˢᵗ Cir., 2004).**

B. Argument

The Supreme Court of Puerto Rico has held that the local torts statute, Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. §5141, was sufficiently general to recognize a cause of action for tortious interference with a contract. ***Sterling Merchandising, Inc. v. Nestle, S.A.***, **546 F.Supp.2d 245 (2010)**. To establish a cause of action for interference with a contractual relationship pursuant to Puerto Rico tort law, a plaintiff must establish four elements: a) the existence of a contract with which a third party interferes; b) that the interfering party acted with intent and knowledge of the existence of a contract; c) that the plaintiff suffered damages; and d) that a causal relationship exists between defendant's actions interfering with

the contract and the damages suffered by plaintiff. ***MVM, Inc. v. Rodríguez***, **568 F. Supp.2d 158 (D.P.R., 2008)**; ***Justino Figeroa v. Walgreens of San Patricio, Inc.***, **155 P.R.Dec. 560**; ***Dolphin Int'l of P.R. v. Ryder Truck Lines***, **127 D.P.R. 869.**

There is a one-year statute of limitations for tort actions pursuant to article 1868 (2) of the Puerto Rico Civil Code. 31 L.P.R.A. §5298(2).  This one-year period begins to run once "the claimant is on notice of her claim; that is, notice the injury, plus notice of the person who caused it." ***Velez v. R.J. Reynolds Tobacco Co.***, **429 F.3d 10 (1st Cir., 2005).** In Puerto Rico, the modality of continuous damages has been recognized as the sequence of events that are being produced and are being known periodically with the passage of time and are attributed to the same negligent party. The statute-of-limitations does not being to run until the cause of the damage is over. ***Santiago Rivera v. Rios Alonso***, **156 D.P.R. 181 (2002)**; ***Umpierre v. Banco Popular***, **170 D.P.R. 205 (2007)**; ***Seda v. Miranda Hostos***, **88 D.P.R. 355 (1963)**. In ***Santiago Rivera***, **supra**, and ***Umpierre***, **supra**, plaintiffs were victims of sexual harassment in the workplace or victims of physical abuse for an extended period of time. Under the continuous damages doctrine the Supreme Court of Puerto Rico determined that the one (1) year statute of limitations on their actions did not begin to run until after the sexual harassment and the physical abuse had stopped.

In our present case, the tort was committed when FLOVAC was harassed by AIRVAC in the way of tortious interference with FLOVAC's contractual relationship with the Puerto Rico Aqueduct and Sewer Authority ["PRASA"]. The tortious events started in June 28, 2010 when Mark Jones, president of AIRVAC, wrote a letter to United State Environmental Protection Agency official regarding alleged non-compliance with the American Recovery and Reinvestment Act of 2009 ["ARRA"] on the part of FLOVAC, after FLOVAC had won the bid on a project in Puerto Rico called the Ingenio Project.[17] Jones' (and Airvac's) statements were proven otherwise, but in the meanwhile triggered events that led to multiple and a dragged process of investigation of FLOVAC's vacuum sewer systems.

On March 17, 2011, the contractor for the Ingenio Project[18] wrote to PRASA regarding its decision to cancel the contract with FLOVAC and how that would cause the whole project to stop.[19] Finally, it was decided that in fact FLOVAC did comply with ARRA requirements and was allowed to provide the vacuum sewers systems for the Ingenio Project, but as noted in Hector Rivera's sworn statement that issue was not resolved and went on well into the summer of 2011.[20] This is enough evidence to show that a material issue of fact of when the statute-of-

---

[17] Appx. 15, Mark Jones letter to USEPA official dated 6/28/2010
[18] Flovac was the subcontractor for the Ingenio Project retained by the general contractor Design and Build S.E.
[19] Appx. 16, Letter from Design and Build's official dated March 17, 2011 (translation will be provided).
[20] Appx. 11, Hector Rivera's Unsworn Statement

limitations started to run for the present case, which at the very least should be decided by the jury.

For that reason, it is FLOVAC's contention that there was an issue of genuine material fact to consider whether the actions by AIRVAC put in motion a series of events that went well into the summer of 2011 that would make the defense of time-barred at this stage improper.

## CONCLUSION

In essence, the district court erred in granting defendants motion for summary judgment when it had genuine issues of material facts before it. Even though plaintiff does not count with a qualified expert witness under the rules of evidence, it does count with the testimony of people who have all been in the vacuum sewer system submarket for more than 20 years, and as such would define to a jury as a relevant market for antitrust purposes pursuant to the applicable law.

Furthermore the court erred in concluding that Flovac's tortious interference cause of action was time-barred. There is more than enough evidence on the record to establish that defendant's tortious acts continued well into the summer of 2011. Therefore, pursuant to the applicable law such action was not time-barred.

Wherefore, plaintiff-appellant Flovac, respectfully requests that this Honorable Court REVERSE and REMAND the judgment granting defendants Motion for Summary Judgment and dismissing the case with prejudice.

In San Juan, Puerto Rico, this 13th day of October, 2015.

**Roberto Ruiz Comas, Esq.**
USCA No. 32436

**RC LEGAL & LITIGATION SERVICES, P.S.C.**
Attorney for Plaintiffs-Appellants
Doral Bank Plaza, Suite 801
Calle Resolución #33
San Juan, Puerto Rico 00920
Tel. (787)777-8000/Fax (787)767-7107

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, Plaintiff-Appellant certifies that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 6,023 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.    This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced using Times New Roman in 14 point size font.

In San Juan, Puerto Rico, this 13th day of October, 2015.

**Roberto Ruiz Comas, Esq.**
USCA No. 32436

**RC LEGAL & LITIGATION SERVICES, P.S.C.**
Attorney for Plaintiffs-Appellants
Doral Bank Plaza, Suite 801
Calle Resolución #33
San Juan, Puerto Rico 00920
Tel. (787)777-8000/Fax (787)767-7107

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that copies of the Plaintiff-Appellant's brief has been served through the CM/ECF system in accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court on Counsel for Appellees: Zachary Madonia, Courtney Rosen, Inaebelle Santiago, John Treece, David Schiffman.

In San Juan, Puerto Rico, this 13th, day of October, 2015.

**Roberto Ruiz Comas, Esq.**
USCA No. 32436

**RC LEGAL & LITIGATION SERVICES, P.S.C.**
Attorney for Plaintiffs-Appellants
Doral Bank Plaza, Suite 801
Calle Resolución #33
San Juan, Puerto Rico 00920
Tel. (787)777-8000/Fax (787)767-7107

## **ADDENDUM**

## **TABLE OF CONTENTS**

**DOC.**                                                    **Page**

138      Opinion and Order                                    1

139      Judgment                                            19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FLOVAC, INC.,

    Plaintiff,

        v.

AIRVAC, INC., ET AL.,

    Defendants.

**Civil No. 12-1348 (SEC)**

## OPINION AND ORDER

Before the Court are the defendants' summary-judgment motion, Docket # 108, the plaintiff's opposition thereto, Docket # 96, and the defendants' reply. Docket # 123. After reviewing the filings and the applicable law, this motion is **GRANTED**.

**Factual and Procedural Background**

Flovac, Inc. (Flovac), a manufacturer of vacuum sewer systems, brings this antitrust suit under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, against its competitor, Airvac, Inc. (Airvac) and its president, Mark Jones, charging them with conspiring to influence municipalities to issue specifications for vacuum sewer systems installation projects that favored Airvac's system, and by sending a letter misrepresenting Flovac's compliance with certain requirements. The complaint also asserts pendent and parallel local-law claims under Puerto Rico's antitrust statute, P.R. Laws Ann. tit 10, §§ 258, 260, and for tortious interference, P.R. Laws Ann. tit. 31, § 5141.

The Court recounts below the background leading up to the alleged antitrust violations, reserving for later discussion a more detailed dissertation of the facts pertinent to the analysis. In doing so, and whenever the parties quarrel over what occurred, the Court "adhere[s] to the plaintiff's version in keeping with . . . [its] role in reviewing" summary-judgment motions, Ahmed v. Johnson, 752 F.3d 490, 492 (1st Cir. 2014), assuming, of course, that those facts are neither inadmissible nor unsupported by the record.

**Civil No. 12-1348 (SEC)**                                                  **Page 2**

I.

       This action concerns sewer systems. Governmental entities like municipalities, but also land developers, use sewer systems to collect and treat wastewater from homes and buildings. Docket # 98 (SUF), ¶ 6. And they come in different varieties—"gravity sewer systems, grinder-pump low pressure sewer systems, septic tank effluent pump systems, and septic tank effluent gravity sewer systems," and, most relevant to this case, vacuum sewer systems——but they are all used for the same purpose: Conveying wastewater from a source to an area for treatment. SUF ¶ 6. According to a July 2010 study by the Environmental Protection Agency (EPA), there are around 16,000 sewers systems in the US, the majority of which are gravity, Docket # 98-4, p. 6, and approximately 365 are vacuum sewer systems. SUF ¶ 9.

       Airvac and Flovac are two corporations that manufacture, market, and sell vacuum sewer systems, SUF ¶ 1, and so are Iseki and Saksui. See Docket # 119, p. 17 (ASUF), ¶ 5. Neither Airvac nor Flovac, however, constructs vacuum sewer systems (that is done by general contractors); they merely sell equipment and manufactured goods essential to sewer systems, e.g., interface valves, valve pit components, vacuum pumps, and other vacuum station equipment. SUF ¶ 5.

       Founded in 1968, Airvac is an Indiana corporation, and Mark Jones became its president in 1999, though he had worked there since 1992. ASUF ¶¶ 1-2. Airvac describes itself as "the world leader in vacuum sewer technology." Docket # 98-3, p. 2. And for good reason: Of the approximately 365 vacuum sewer systems in the US, 320 are Airvac's. SUF ¶ 9. The opposite is true of the greater sewer system market, however. Since 2004, Airvac has marketed vacuum sewer system technology for more than 750 different potential sewer system installations projects in the US; of those, it secured around 60, meaning that Airvac persuaded a municipality or engineer to install its vacuum sewer system less than 8% of the time. SUF ¶ 10. This is so, in part, because of our free market system. Before constructing or modifying a sewer system,

Civil No. 12-1348 (SEC)                                                                    Page 3

municipalities evaluate different types of sewer systems, including gravity, low pressure, and vacuum. SUF ¶ 7. Airvac's business and marketing strategy thus centers on convincing municipalities and design engineers to install vacuum sewer systems, rather than other sewer systems. SUF ¶ 17.

Flovac, a Puerto Rico corporation, is a newcomer in the vacuum sewer system business. It was founded in 2009 by Héctor Rivera, Flovac's sole owner and president. Docket # 119-47, p. 76; Docket # 1, V. ¶ 3. (Confusingly, "Flovac Inc.," the plaintiff, and "Flovac International," a Dutch corporation, are actually two different entities, the former being a "franchise" of the latter.) The nub of Flovac's complaint is that Airvac and Jones have hindered its attempts to "penetrate" the Puerto Rico and continental United States market for vacuum sewer systems. Docket # 1, V. ¶ 5. And the summary-judgment record, viewed in the light most favorable to Flovac, indeed shows that Airvac has proven to be a hardhearted competitor; but, as Judge Easterbrook once remarked, "a desire to extinguish one's rivals is entirely consistent with, often is the motive behind, competition." A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc., 881 F.2d 1396, 1402 (7th Cir.1989).

In this venue, Flovac challenges Airvac's conduct in connection with five vacuum sewer system installations projects. SUF ¶ 24. But only the "Ingenio Project," located in Toa Baja, Puerto Rico, necessitates discussion. (Flovac's tortious interference claims concern only the Ingenio Project, whereas the other four projects relate only to the alleged antitrust violations, which as explained below, fail given Airvac's lack of market power; Airvac's conduct concerning these four projects is therefore irrelevant for present purposes.)

The Ingenio Project, one of the projects for which Airvac and Flovac competed, was commissioned by the Puerto Rico Aqueduct and Sewer Authority (PRASA), and it was partially funded with funds earmarked by the American Recovery and Reinvestment Act of 2009 (ARRA), Pub. L. No. 111-5, 123 Stat. 115. SUF ¶ 25. PRASA advertised the Ingenio Project

Civil No. 12-1348 (SEC)                                                                                     Page 4

for bid on August 30, 2009, and although the project's specifications provided that Airvac "was used as the basis of design," they also stated that the would-be contractor could consider "other manufactures that comply with the requirement and intent of the drawing . . . ." SUF ¶ 29. Around this time, one of Airvac's Puerto Rico sales representatives told Jones that Flovac had been trying to enter the US market. Docket # 119-44, pp. 37-38. This sales representative also tipped off Jones that some of Flovac's vacuum sewer components had not been manufactured in the US. Docket # 124, ¶ 17.

As it happened, the winning bidder and contractor chose Flovac's vacuum sewer system over Airvac's. SUF ¶ 30. And Jones, dissatisfied with that outcome, wrote to PRASA on May 20, 2010, questioning Flovac's compliance with ARRA's "Buy American" requirements. Jones took issue with the valve of Flovac's vacuum sewer system, "because it [was] manufactured in the Netherlands." Docket # 89-14, p. 3. Jones also stated that Flovac could not meet the Ingenio Project's independent requirement "that all the main components of the sewer system must be purchased from the same manufacturer." SUF ¶ 34. Flovac's Rivera became aware of Jones's letter shortly after it was sent. And as soon as PRASA received the letter, it forbade the builder from "continu[ing] forward with the installation of the Flovac system," SUF ¶ 36, presumably while it investigated Jones's imputations.

PRASA wrote back to Jones in June, and essentially "sustained" its "position that [Flovac's] vacuum systems complied with the ARRA and the project's contractual requirements." Docket # 119-25, p. 2. Undeterred, Jones contacted the EPA, asking it "to investigate the concerns" just discussed. Docket # 119-26, p. 4. The EPA investigated Jones's claims, and "recommended" that Flovac manufacture the upper body component in Puerto Rico "[t]o make the substantial transformation process more complex." Docket # 98-6, pp. 16-17. And that is exactly what Flovac did; it began assembling and manufacturing, "by injection molding one sub-component of the valve," Docket # 98-6, p. 11, in Puerto Rico. Although the

Civil No. 12-1348 (SEC)                                                              Page 5

EPA and other environmental agencies "supervised" the above process, the EPA never disqualified Flovac from participating in the Ingenio Project. Id.; Docket # 119, ¶ 37. This presumably infuriated Airvac, who had hoped to win this project. See ASUF ¶ 31. One of Airvac's representatives in Puerto Rico even referred to this whole matter as the "'Ingenio fraud case.'" ASUF ¶ 37.

Ultimately, <u>Flovac resumed and completed the Ingenio Project</u>, whose subcontract (which Flovac signed) provided for $3.02 million in compensation, Docket # 98-16, though it is unclear from the record whether Flovac actually received that whole amount. Rivera nonetheless testified in his deposition that the project's paralyzation, which according to Rivera, lasted for "about ten months," injured Flovac, because it was "paying [its] staff" but "not b[eing] paid." Docket # 98-6, pp. 5-6.

II.

On May 16, 2012, this antitrust action ensued. Docket # 1. The original discovery deadline was set for February 14, 2013, Docket # 15, and, at the parties' behest, extended until May 31, 2013. Docket # 17. Flovac then requested until October 31, 2013 to finish discovery, Docket # 55, and the Court granted this request. Docket # 65. At the December 18, 2013 conference, Flovac requested the reopening of the discovery; the Court reluctantly granted this request, pushing back the discovery cut-off date to February 17, 2014. Docket # 80. (Flovac was then admonished for violating a discovery order, Docket # 91, which forced the Court to push back the deadline one last time.)

In due course, the defendants moved for summary judgment, see Fed. R. Civ. P. 56, positing that because Flovac cannot show injury, they are entitled to summary judgment on all of its claims. Docket # 96, p. 1. As to Flovac's section 2 claims, the defendants contend that summary judgment is proper because Flovac (1) cannot prove that Airvac has market power in a defined relevant market; (2) falls short of establishing that the defendants' alleged misconduct

Civil No. 12-1348 (SEC)                                                                      **Page 6**

was exclusionary; and (3) marshals no evidence that the defendants' conduct injured competition. Those same three grounds, the defendants further argue, spell doom for Flovac's section 1 claims, and for its local-law antitrust claims. The defendants also say that the section 1 claims fail, as Flovac lacks evidence to show that the defendants entered into a conspiracy with any municipality or engineer to restrain trade. In addition, the defendants invoke the <u>Noerr-Pennington</u> doctrine, maintaining that their alleged efforts and purported misrepresentations are immune from antitrust liability. Lastly, Airvac avers that Flovac's tortious interference claims are time-barred, and that in any event cannot survive summary judgment on the merits.

Flovac opposed, maintaining that none of its claims can be summarily disposed of. Docket # 118. Oral argument was heard in January 2015. Docket # 135.

**Standard of Review**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, it is axiomatic that courts "may not weigh the evidence," <u>Casas Office Machs., Inc. v. Mita Copystar Am., Inc.</u>, 42 F.3d 668 (1st Cir. 1994), and yet must construe the record in the "light most flattering" to the nonmovant. <u>Soto-Padró v. Public Bldgs. Authority</u>, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. <u>Tolan v. Cotton</u>, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the moving-party properly constitutes a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," <u>Geshke v. Crocs, Inc.</u>, 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." <u>Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011). "If the evidence is merely colorable, or is not significantly probative," the Supreme Court has instructed, "summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986) (internal citations omitted). So the nonmovant cannot rest on conclusory allegations and improbable inferences.

**Civil No. 12-1348 (SEC)**                                             **Page 7**

Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013); neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," KTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### Applicable Law and Analysis

*Federal Antitrust Claims*

As noted, Flovac asserts conspiracy claims under § 1 of the Sherman Act, which prohibits conspiracies in restraint of trade. 15 U.S.C. § 1. Flovac explicitly cabins its § 1 claims under the so-called "rule of reason," Docket # 118, p. 11, and therefore makes no claim that any agreement in this case falls under the so-called "per se" category. See generally NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 133-36 (1998) (discussing per se rule). Flovac also claims violations of § 2, which forbids monopolization or attempt to monopolize "any part" of commerce, as well as conspiracies and combinations to monopolize. 15 U.S.C. § 2.

Of particular importance to this case, both claims under § 1 (at least those analyzed under the rule of reason) and § 2 require a threshold finding of market power. E.g., Diaz Aviation Corp. v. Airport Aviation Servs., Inc., 716 F.3d 256, 265 (1st Cir. 2013); see also George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 508 F.2d 547, 550 (1st Cir.1974) (extending market-power requirement to attempted-monopolization claims). (A monopolization that violates § 2 necessitates "an initial determination that the defendant has monopoly power—a high degree of market power." William M. Landes & Richard A. Posner, Market Power in Antitrust Cases, 94 Harv. L. Rev. 937 (1981).) Market power is a would-be monopolist's ability to profitably charge more than the competitive price for a prolonged time; or, as Judge Posner puts it, "the power to raise price above the competitive level without losing so much business

Civil No. 12-1348 (SEC)                                                              **Page 8**

to other sellers that the price would quickly fall back to that level . . . ." <u>In re Sulfuric Acid</u>

<u>Antitrust Litig.</u>, 703 F.3d 1004, 1007 (7th Cir. 2012).

Determining market power mandates defining the relevant market; <u>Springfield Terminal</u>

<u>Ry. Co. v. Canadian Pac. Ltd.</u>, 133 F.3d 103, 107 (1st Cir. 1997), which has two aspects: A

product market and a geographic market. <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447,

459 (1993); <u>Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.</u>, 79 F.3d 182, 197

(1st Cir. 1996). Here, Flovac alleges that the geographic market comprises Puerto Rico and the

mainland US. And the defendants (quite wisely so) do not quarrel with Flovac's proposition,

so the inquiry zeroes in on whether Flovac has presented sufficient evidence of a relevant

product market.

      The relevant product market, the Supreme Court made clear over 50 years ago, is

comprised of products that are considered by consumers to be "reasonabl[y] interchangeab[le]"

with what an antitrust defendant sells. <u>Eastman Kodak Co. v. Image Tech'l Servs., Inc.</u>, 504

U.S. 451, 482 (1992); <u>Brown Shoe Co. v. United States</u>, 370 U.S. 294, 325 (1962); <u>United</u>

<u>States v. E. I. du Pont de Nemours & Co.</u>, 351 U.S. 377, 394 (1956). This analysis is twofold.

One must first consider not only the product in play (vacuum sewer systems), but the reasonable

substitutes accessible to consumers; that is, the products with which Airvac's vacuum sewer

systems effectively competes. Then, the inquiry focuses on "[t]he extent to which consumers

will change their consumption of one product in response to a price change in another; i.e., the

'cross-elasticity of demand.'" <u>Kodak</u>, 504 U.S. at 469. A high cross-elasticity of demand usually

means that products are substitutes, while the opposite indicates that the products are not

substitutes and, consequently, compete in different markets. <u>See, e.g.</u>, <u>id.</u>

      In short, if "there are market alternatives that buyers may readily use for their purposes,"

the Supreme Court has said, "illegal monopoly does not exist." <u>E. I. du Pont</u>, 351 U.S. at 391.

It bears emphasis that these determinations are made from the consumer's perspective—here

Civil No. 12-1348 (SEC)                                                    **Page 9**

the municipalities. <u>George R. Whitten, Jr., Inc.</u>, 508 F.2d at 551 ("By necessity, definition of 'market' must also focus on attitudes and reactions of consumers.").

Flovac's complaint alleges the same relevant product market for its § 1 and § 2 claims: Vacuum sewer systems. So the same market analysis applies for both claims. See <u>Fraser v. Major League Soccer, L.L.C.</u>, 284 F.3d 47, 61 (1st Cir. 2002). And no one disputes that if Flovac's proposed relevant product market were accepted, Airvac would have both market power and monopoly power, because its share of that market exceeds 87%, far above the well-recognized threshold. <u>See</u>, <u>e.g.</u>, <u>United States v. Aluminum Co. of America</u>, 148 F.2d 416, 424 (2d Cir.1945) (L. Hand, J.) (more than 50% of market share is required for inferring monopoly power); <u>cf.</u> <u>Grappone, Inc. v. Subaru of New England, Inc.</u>, 858 F.2d 792, 797 (1st Cir. 1988) ("If the fact that Jefferson Parish Hospital received 30 percent of all hospital patients living in East Jefferson Parish did not show market power, it is difficult to see how these far smaller figures could show the contrary here.").

But in their summary-judgment motion, the defendants have come forward with sufficient competent evidence to pierce the pleadings, and thereby show that the relevant product market comprises others sewer systems "that are strong competitors with and provide interchangeable alternatives to vacuum sewer systems." Docket # 97, p. 13. The summary-judgment record makes manifest, and Flovac so concedes, that (1) all sewer systems are used for the same purpose: To transport wastewater from a source to a treatment facility, SUF ¶ 2; (2) before deciding to buy vacuum sewer systems, municipalities also consider gravity and low pressure sewer systems, SUF ¶¶ 6-8; and (3) Airvac has constantly faced competition with other kinds of sewer systems. SUF ¶ 10. And Flovac also concedes, as it must, that if "the analysis is made using" the defendants' proposed product market, "then clearly the 2% of the sewer system market would apply," Docket # 118, p. 13, and Airvac would "not have market power." <u>Id.</u> at 12; <u>accord</u>, <u>e.g.</u>, <u>A.I. Root Co. v. Computer/Dynamics, Inc.</u>, 806 F.2d 673, 675 (6th Cir. 1986) (2-4% deemed insufficient to achieve market power).

Civil No. 12-1348 (SEC)                                                                    **Page 10**

These uncontested facts, the defendants correctly argue, Docket # 123, p. 9, suffice to meet their initial burden of demonstrating the absence of a genuine issue of material fact that the nonmovant (Flovac) will be unable to carry its burden of persuasion at trial," Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) of proving that the relevant product market encompasses only vacuum sewer systems. Of course, Flovac bears the ultimate burden of establishing the relevant market, e.g., Town of Concord, Mass. v. Boston Edison Co., 915 F.2d 17, 32 (1st Cir. 1990) (Breyer, J.), and at the summary-judgment stage it must "present sufficient evidence from which a reasonable jury could find the existence of the proposed relevant market." Coastal Fuels of Puerto Rico, Inc., 79 F.3d at 197. So now the burden shifts onto Flovac to "point to competent evidence and specific facts to stave off summary judgment," Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011), by creating a triable issue about why other kinds of sewer systems should be excluded from the relevant product market. Summary judgment is, after all, "the put up or shut up moment in litigation." Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013) (citation and internal quotation marks omitted). But Flovac falls short of shouldering this burden.

As an initial matter, Flovac has come forward with no competent economic evidence in support of its theory that the relevant product market is limited to vacuum sewer systems. Although, contrary to other circuits, e.g., Bailey v. Allgas, Inc., 284 F.3d 1237, 1246 (11th Cir. 2002), the First Circuit does not appear to have decided whether a plaintiff must produce expert testimony to prove a relevant product market, it has intimated so, see U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 599 (1st Cir. 1993) (Boudin, J.) ("In practice, the frustrating but routine question how to define the product market is answered in antitrust cases by asking expert economists to testify."). And that is unsurprising, for common sense suggests that expert testimony, if favorable of course, would aid an antitrust plaintiff in its quest to establish a

Civil No. 12-1348 (SEC)                                                                    Page 11

proposed (and narrow) relevant product market. See, e.g., Lenox MacLaren Surgical Corp. v.

Medtronic, Inc., 762 F.3d 1114, 1120 (10th Cir. 2014) ("From Dr. Chewning's testimony, a

fact-finder could reasonably infer a low or zero cross-elasticity of demand between hand tools

and bone mills."). Yet Flovac never retained an expert.

Be that as it may, an antitrust plaintiff facing a properly configured summary-judgment

motion, like Flovac is, must still marshal competent "adequate evidence to establish a genuine

issue of material fact." Davric Maine Corp. v. Rancourt, 216 F.3d 143, 146-47 (1st Cir. 2000)

(so holding in the antitrust context). And because defining the relevant market is, at bottom, a

"key economic question," DSM Desotech Inc. v. 3D Sys. Corp., 749 F.3d 1332, 1342 (Fed. Cir.

2014), it stands to reason that Flovac must introduce some type of economic evidence, even if

not done through an economic expert. See Diaz Aviation Corp., 716 F.3d at 265 ("Rule of

reason analysis typically requires a plaintiff to show that the defendants' actions enhanced

market power . . .[,] which in turn requires some economic analysis of the relevant market."

(emphasis added) (citing E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Assoc., Inc.,

357 F.3d 1, 5 (1st Cir. 2004))); see also George R. Whitten, Jr., Inc., 508 F.2d at 554 (affirming

summary-judgment because of lack of "evidence that pipeless systems cater to a discrete class

of consumers"). Flovac could have, for instance, sought discovery from the municipalities (the

consumers) about whether they viewed the different types of sewer systems as having different

"utility, efficiency, reliability, responsiveness, and continuity," Grinnell Corp., 384 U.S. at 574,

yet it chose not to, which is unsurprising given its "lackadaisical approach to discovery." Docket

# 80, p. 1. Nor did Flovac provide evidence concerning "the effect on pricing or output, or other

relevant economic variables." Diaz Aviation Corp., 716 F.3d at 265; see also, e.g., U.S.

Healthcare, Inc., 986 F.2d at 599 ("Usage patterns, customer surveys, actual profit levels,

comparison of features, ease of entry, and many other facts are pertinent in answering the

question.").

00011

Civil No. 12-1348 (SEC)                                                                    Page 12

With these critical shortcomings in mind, the inquiry focuses on the evidence that Flovac did introduce. Flovac marshals two pieces of evidence on this front, but none suffices "to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

First, Flovac vouchsafes a lone assertion from an undated affidavit by its president, Héctor Rivera, that "[v]acuum sewer systems as a particular technology [are] more suitable for particular geographical and topographical areas than gravity or other technologies." Docket # 119-42, ¶ 3. But because Rivera's affidavit is undated, it violates 28 U.S.C. § 1746. More importantly, such "vague and conclusory statements in an affidavit," the defendants correctly point out, "do not meet the specificity requirement of Federal Rule 56." Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988); see also, e.g., Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 120 (1st Cir. 2005). This is especially true here because Rivera's affidavit conveniently omits defining these "geographical and topographical areas." But even putting those flaws aside, Rivera's opinion, which of course represents Flovac's opinion, is insufficient as a matter of law to establish a proposed relevant product market. See Flegel v. Christian Hosp., 4 F.3d 682, 690 n. 7 (8th Cir. 1993) ("The plaintiffs' perspective on the market has no bearing."); accord Winter Hill Frozen Foods & Servs., Inc. v. Haagen-Dazs Co., 691 F. Supp. 539, 546 n. 12 (D. Mass. 1988) (holding, in dicta, that affidavit of plaintiff's principal was "insufficient to establish a distinct market for super premium ice cream").

Second, and in a clear attempt to provide some heft to Rivera's otherwise vague declaration, Flovac asserts in its memorandum, but not in its opposing statement, that "if the Court reviews" Airvac's projects, "it is axiomatic" that vacuum sewer systems are "more suitable for certain geographical areas than others." Docket # 118, p. 13. Flovac then goes on to say that, as of 2009, Airvac had "54 projects" in Florida; "38" in Indiana; "26" in Virginia; and "20" in North Carolina. Id. (citing Docket # 119-40). But this amounts to nothing more than smoke and mirrors.

Civil No. 12-1348 (SEC)                                                                Page 13

As a threshold matter, this "evidence" manifestly violates the anti-ferret rule, because Flovac never included it in its opposing or additional statement of material facts, as required by Local Rule 56(c); nor did it cite to the "specific page" of this exhibit. So it is disregarded. Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 31 (1st Cir. 2010); see also Nievesv. Univ. of P.R, 7 F.3d 270, 280 (1st Cir. 1993) ("[A] party may not generate a trial-worthy dispute at summary judgment merely by presenting unsubstantiated allegations in its memoranda."). At any rate, this proffer explains neither why nor how vacuum sewer systems are more suitable in these areas; and even assuming that it did, it sheds no light on what these areas share in common that would exclude the other kinds of sewer systems. But even more fundamentally, Flovac offers zero evidence that consumers in areas "more suitable" for vacuum systems do not consider gravity or pressure systems to be "reasonably interchangeable" with vacuum systems; nor does it marshal any evidence that consumers in these "more suitable" areas do not view vacuum systems as close substitutes.

The upshot is that Flovac's cumulative evidence is, at most, colorable. But "[i]f the evidence is merely colorable, or is not significantly probative," the Supreme Court has instructed, "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (internal citations omitted). And where, as here, an antitrust plaintiff neglects to "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient." City of New York v. Grp. Health Inc., 649 F.3d 151, 155 (2d Cir. 2011) (citations and internal quotation marks omitted). The defendants are therefore entitled to summary judgment, because Flovac—who concedes that sewer vacuum systems compete with the other types of sewer systems, Docket # 119, ¶¶ 7,10—falls miles short of creating a triable issue about why the other types of sewer systems are not viable substitutes for Airvac's vacuum sewer systems. Cf. IGT

3

Civil No. 12-1348 (SEC)                                                                    Page 14

v. Alliance Gaming Corp., 702 F.3d 1338, 1344 (Fed. Cir. 2012) (affirming summary judgment

where plaintiff had failed to raise a triable issue that other types of gaming machines were not

a viable substitute for defendant's machine, and had also conceded that defendant's machine

competed with other types of machines from the consumer's perspective). No reasonable jury

could therefore find in favor of Flovac's proposed product market, and this complete lack of

competent evidence compels a grant of summary judgment to the defendants.[1]

   "Antitrust claims often rise or fall on the definition of the relevant market." Bathke v.

Casey's Gen. Stores, Inc., 64 F.3d 340, 345 (8th Cir. 1995). So too here. Because vacuum sewer

systems are not a market, Airvac is not a monopolist of vacuum sewer systems. Flovac having

therefore failed to meet this threshold requirement, the Court need not consider the defendants'

other defenses concerning the alleged exclusionary conduct. See Blue Cross & Blue Shield

United of Wisconsin v. Marshfield Clinic, 65 F.3d 1406, 1413 (7th Cir.) (Posner, J.) ("Since

monopoly power was not proved, we need not evaluate the practices by which the Clinic

acquired or maintained it."), as amended on denial of reh'g (1995).

   One last point. "[I]f there is any case in which counsel has the obligation to cull the

record, organize the facts, and present them in the framework of a persuasive legal argument,

it is a sophisticated antitrust case like this one." U.S. Healthcare, Inc., 986 F.2d at 599. Yet

Flovac apparently turned a deaf ear to that admonition. Although the Court granted its request

_____

   [1] At oral argument, Flovac appeared to change gears, advancing, for the first time, a theory that
vacuum sewer systems are a submarket of all sewer systems. That theory is hopeless. For one thing, "an
argument raised for the first time at a hearing . . . is not properly before the Court." Stockler v. Reassure
Am. Life Ins. Co., No. 11-15415, 2013 WL 866486, at *8 (E.D. Mich. Mar. 7, 2013) (citing cases to
that effect). For another, that theory was adverted to in a wholly perfunctory matter (Flovac neither
applied nor discussed the Brown Shoe factors, 370 U.S. at 325), so it is deemed waived. United States
v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). And in any event "the requirements for pleading a submarket
are no different from those for pleading a relevant broader market," PSKS, Inc. v. Leegin Creative
Leather Products, Inc., 615 F.3d 412, 418 (5th Cir. 2010); see also F.T.C. v. Whole Foods Mkt., Inc.,
548 F.3d 1028, 1058-59 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) (explaining why recent caselaw
cast doubt on the continued vitality of Brown Shoe).

Civil No. 12-1348 (SEC)                                                    Page 15

to reopen discovery, Flovac took little advantage of that opportunity, neglecting to conduct any

meaningful discovery to support its proposed relevant (and exceedingly narrow) product market.

It also failed to file certified English translations of its Spanish-language exhibits, Dockets #

106, 114. Most frustratingly, its analysis of the relevant product market consisted of two

paragraphs, Docket # 118, pp. 12-13; it never requested leave to file a surreply to the

defendants' devastating reply on that front; and its additional statement of material facts

contained no facts in support of its proposed relevant market.

*Pendent Claims*

As noted, Flovac challenges the same alleged monopolistic conduct under Puerto Rico's

antitrust statute, P.R. Laws Ann. tit 10, §§ 258, 260, and asserts that the defendants tortiously

interfered with the Ingenio Contract based on Jones's letter to PRASA. See Gen. Office Prods.

Corp. v. A.M. Capen's Sons, Inc., 780 F.2d 1077, 1081-82 (1st Cir.1986) (discussing the four

elements of tortious interference claims under Puerto Rico law). For the reasons laid out below,

the defendants are right that Flovac's pendent local-law claims cannot survive summary

judgment.

The local antitrust claims require little discussion. Inasmuch as Puerto Rico's antitrust

statute has been deemed "coextensive" with the Sherman Act, Flovac's parallel and identical

claims under Puerto Rico law must suffer the same outcome: Dismissal. See Podiatrist Ass'n,

Inc. v. La Cruz Azul De Puerto Rico, Inc., 332 F.3d 6, 16 (1st Cir. 2003); accord Pressure

Vessels P.R. v. Empire Gas P.R., 1994 P.R.-Eng. 909, 547, 137 P.R. Dec. 497, 509-14 (1994);

Ramallo Bros. Printing v. El Dia, Inc., 392 F. Supp. 2d 118, 143 (D.P.R. 2005). No more is

needed to jettison these claims.

As to the tortious interference claims, the defendants argue, among other grounds that

need not be considered, that those claims are time-barred. Docket # 97, p. 17. Because Flovac

found out about Jones's May 20, 2010 letter to PRASA shortly after its delivery, and because

Civil No. 12-1348 (SEC)                                                   Page 16

Flovac waited until May 16, 2012 to file suit, the defendants maintain that the tortious interference claims are barred by the applicable one-year statute of limitations. Id.

Flovac can forestall the entry of summary judgment only by showing that genuine issues of material fact exist about whether its tortious interference claims were "filed within the limitations period," Santana-Concepción v. Centro Médico del Turabo, Inc., 768 F.3d 5, 9 (1st Cir. 2014), which, under the applicable Article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2), is one year. See, e.g., Sterling Merch., Inc. v. Nestle, S.A., 546 F. Supp. 2d 1, 2 (D.P.R. 2008) (reiterating that tortious interference claims are actionable under Puerto Rico's general tort statute, which borrows Article 1868(2) one-year limitations period). Flovac concedes that Jones's letter was "the trigger," Docket # 118, p. 28, but argues, in an obvious effort to soften the bite of the defendants' reasoning, that the limitations period "continued to be extended" until May 16, 2011. Id. "[T]here were acts occurring well into 2011," goes the argument, that allow Flovac "to claim" that its injuries "passed well [sic] May 16, 2011." Id. So Flovac, in other words, invokes the so-called continuing damages doctrine. And in support of this argument, Flovac offers a March 17, 2011 letter, in which the Ingenio Project's contractor wrote to PRASA to complain about PRASA's alleged "decision to not use [Flovac] valves any longer." Id. (citing Docket # 119-41). Flovac also furnishes an assertion from Rivera's affidavit that Airvac's "intervention provoked the delay of the [Ingenio Project] after the summer of 2011." Docket # 119-42, p. 3. This argument goes nowhere.

The short of it is that Flovac's reliance on the continuous damages doctrine, the defendants' aptly point out, actually reinforces their statute-of-limitations defense. This is because "[i]n continuing damages cases, as in other tort actions in Puerto Rico, the statute of limitations commences when the plaintiff has knowledge of the injury and the author of the damage." Cruz Vargas v. R.J. Reynolds Tobacco Co., 218 F. Supp. 2d 109, 115 (D.P.R. 2002) (citation omitted), aff'd sub nom. Cruz-Vargas v. R.J. Reynolds Tobacco Co., 348 F.3d 271 (1st

Cir. 2003); Mullins v. Dep't of Labor, 608 F. Supp. 2d 245, 254 (D.P.R. 2009). "The

determining factor," the Puerto Rico Supreme Court has made clear in this context, "is the

moment when occurrence of the damage begins, and that should be considered the starting point

for the limitations period, assuming that the aggrieved parties were aware of the damage as of

that moment and that they could have instituted a cause of action." Galib Frangie v. El Vocero

de P.R., P.R. Offic. Trans, 138 P.R. Dec 560, 575 (1995). So even assuming, dubitante, that

Flovac's tortious interference claims fall under the purview of this doctrine, the same result

obtains.[2] For the record makes manifest, and Flovac so concedes, that Jones's May 20, 2010

letter to PRASA provoked the Ingenio Project's immediate halt, which in turn caused Flovac

its alleged damages. SUF ¶ 36.

It thus follows, without serious question, that in June 2010, Flovac already had actual

knowledge of this injury, and "of the identity of the author of the injury," Alejandro-Ortiz v.

Puerto Rico Elec. Power Auth., 756 F.3d 23, 27 (1st Cir. 2014). The statute of limitations on

Flovac's tort claims, then, had run by June 2011; and this suit, filed on May 16, 2012, was

therefore irrefragably late. No more is needed to conclude that Flovac's tortious interference

claims are time-barred. So the defendants are also entitled to summary-judgment on the tortious

interference claims.

---

[2]Because Flovac never filed a certified English translation of the March 17, 2011 letter, which
is in Spanish, the Court cannot consider it. E.g., González-De-Blasini v. Family Dep't, 377 F.3d 81, 89
(1st Cir. 2004). And the only case cited by Flovac in support of its argument, Santiago v. Rios Alonso,
56 P.R. Dec. 181 (2002) is also in Spanish; but Flovac provided no certified English translation of that
case, so the Court is similarly precluded from considering it. E.g., Puerto Ricans For Puerto Rico Party
v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008). Rivera's perfunctory assertion that Flovac's damages
continued until the summer of 2011, moreover, violates the sham affidavit rule, see, e.g., Orta-Castro
v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110-11 (1st Cir. 2006), because it
contradicts his earlier deposition testimony that the delay provoked by Jones's letter lasted for "about
ten months," Docket # 98-6, p. 6, i.e., until April 2011—at the latest. These procedural issues also spell
doom for Flovac's last-ditch attempt to save its tortious interference claims.

Civil No. 12-1348 (SEC)                                              **Page 18**

**Conclusion**

For the reasons stated, the defendants' motion for summary judgment is **GRANTED**, and this case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of February, 2015.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

FLOVAC, INC.,

    Plaintiff,

           v.

                                  **Civil No. 12-1348 (SEC)**

AIRVAC, INC., ET AL.,

    Defendants.

### JUDGMENT

In accordance with the opinion of even date, Docket # 138, this action is **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 6th day of February, 2015.

                        s/ *Salvador E. Casellas*
                        SALVADOR E. CASELLAS
                        U.S. Senior District Judge